**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Sean Shaughnessy,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-20-00977-PHX-GMS

**ORDER**

At issue is the denial of Plaintiff Sean A. Shaughnessy's Application for Disability Insurance Benefits by the Social Security Administration ("SSA"). The Court has reviewed the briefs and Administrative Record (Doc. 12, "R.") and now affirms the Administrative Law Judge's decision (R. at 30–45).

## I. BACKGROUND

Plaintiff filed an Application for Disability Insurance benefits on August 9, 2016, for a period of disability beginning on March 31, 2015. (R. at 30.) His claim was denied initially on September 8, 2016, and upon reconsideration on November 30, 2016. (R. at 11.) Plaintiff appeared before the ALJ for a hearing regarding his claim on October 24, 2018, which the ALJ denied on January 25, 2019. (R. at 30, 45.) On March 23, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–4.)

The Court has reviewed the medical evidence in its entirety and will discuss the

pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: history of sinus infections, history of Meniere's disease, sensorineural hearing loss, obstructive sleep apnea, diabetes mellitus, carpal tunnel syndrome, status post carpal tunnel release, right minuscular tear and status post repair and cervical degenerative disc disease. (R. at 33.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 44.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 33.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except that [Plaintiff] can never climb ladders, ropes or scaffolds, he can frequently balance, stoop, kneel, crouch and crawl. Further, [Plaintiff] should avoid concentrated exposure to noise, he should [] not [be] exposed to loud noise, and hazards such as moving machinery and unprotected heights. Additionally, [Plaintiff] can frequently handle and finger.

(R. at 35.) Accordingly, the ALJ found that Plaintiff can perform his past relevant work as a manager, sales. (R. at 43–44.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a

"specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANAYSIS

Plaintiff raises three issues for the Court's consideration. First, Plaintiff argues the ALJ erred in rejecting Plaintiff's symptom testimony. (Pl. Br. at 10–13.) Second, Plaintiff argues the ALJ erred in assigning partial weight to the opinions of treating physician, Dr. Frank Oppong-Takyi. (Pl. Br. at 8–10.) Finally, Plaintiff argues the ALJ erred in presenting hypotheticals to the vocational expert ("VE") because the ALJ did not include Dr. Oppong-Takyi's assessed limitations in the hypotheticals. (Pl. Br. at 13–14.)

The Court finds the ALJ made sufficient findings in rejecting Plaintiff's symptom testimony. Second, the Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning partial weight to Dr. Oppong-Takyi's opinions, and by specifically assigning minimal weight to his assessed limitations. Last, the ALJ did not err in excluding Dr. Oppong-Takyi's assessed limitations in the hypotheticals presented to the VE because the ALJ properly assigned minimal weight to those assessed limitations.

### A. The ALJ Appropriately Limited Its Acceptance of Plaintiff's Symptom Testimony.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." (R. at 36.)

Specifically, the ALJ discounted claimant's assertions that he was unable to work in the Spring 2015 because he was laid off in the spring of 2015 and represented thereafter that he was capable of working in connection with obtaining unemployment benefits. (R. at 35, 37.) The ALJ further found that "the substantial evidence of record does not reveal moderate worsening of the claimant's symptoms related to the Meniere's disease until January of 2016." (R. at 36–37.) The ALJ supports this with a summary of the non-treatment of Claimant's condition between 2011–2014, followed by a treatment in 2014 that did reveal symptoms but not harsh ones, (R. at 37), and then the conclusion based on the medical summary of the next treatment in 2016, in which the doctor noted that the condition was improved by his medication regime, (R. at 39). Based on this summary, the ALJ concludes that "the record as a whole shows very minimal evidence of treatment until January of 2016." (R. at 43.) This is an acceptable basis on which to limit the acceptance of symptom testimony. *Fair v. Bowen,* 885 F.2d 598, 603 (9th Cir. 1999). Further, the ALJ cites to medical documentation from 2018 that indicated that the claimant was still driving, when the claimant indicated he had not driven since 2016 and pointed to still further evidence that Plaintiff's symptoms from carpal tunnel and knee ailments improved after surgery and treatment. (R. at 43.)

It is true that not all of the ALJ's observations were helpful or relevant. But the ALJ has made sufficient specific findings with respect to sufficient conditions to provide substantial evidence to support her determinations to discount the extent of those asserted symptoms and conditions.

**B.  The ALJ provided specific and legitimate reasons for assigning partial weight to Dr. Oppong-Takyi's opinions.**

Plaintiff argues the ALJ erred in assigning partial weight to the opinions of Dr. Oppong-Takyi. (Pl. Br. at 8–10.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians,

and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

On November 16, 2016, Dr. Oppong-Takyi completed a Meniere's disease RFC questionnaire for Plaintiff. (R. at 42, 432–34.) On the questionnaire, Dr. Oppong-Takyi indicated he had been seeing Plaintiff for his Meniere's disease for eleven months and that on average Plaintiff experienced five Meniere's episodes a week, each lasting about five hours. (R. at 42, 432.) Dr. Oppong-Takyi indicated that Plaintiff needed three hours after each Meniere's attack to rest, and Plaintiff did not always have a warning that an attack was coming on. (R. at 42, 432–33.) During an attack, Dr. Oppong-Takyi indicated that Plaintiff would not be able to do basic work activities, Plaintiff would need to rest for an hour after an attack, and Plaintiff would need to take a break three or four times a day after experiencing an attack. (R. at 42, 434.) Dr. Oppong-Takyi opined that Plaintiff could complete low stress work, and Plaintiff would be absent from work more than four days a month. (R. at 42, 434.) On October 15, 2018, Dr. Oppong-Takyi indicated Plaintiff's

limitations continued. (R. at 42, 561.) On October 23, 2018, Dr. Oppong-Takyi opined Plaintiff could not drive any vehicle due to his Meniere's disease. (R. at 42, 582.)

The ALJ gave partial weight to Dr. Oppong-Takyi's opinions. (R. at 42.) Specifically, the ALJ gave great weight to Dr. Oppong-Takyi's opinions that Plaintiff has work related limitations, but the ALJ assigned minimal weight to Dr. Oppong-Takyi's opinions as to the specific limitations assessed. (R. at 42.) First, the ALJ explained that Dr. Oppong-Takyi's November 16, 2016, opinion was outside his area of expertise and was based on minimal treatment with Plaintiff. (R. at 42–43.) Comparatively, the ALJ points out that Plaintiff's specialist, Dr. Mary Syms, did not provide an opinion regarding his limitations related to Meniere's disease. (R. at 42.) The ALJ also pointed out that September 16, 2016, records show that the record as a whole has minimal evidence of treatment until January 2016. (R. at 42.) Further, the ALJ found that Dr. Oppong-Takyi's October 23, 2018, opinion indicated Plaintiff was unable to drive, while Plaintiff allegedly stopped driving in 2016. (R. at 42.) However, on April 30, 2018, Plaintiff reported to a physician's assistant ("PA") that he was driving.[1] (R. at 43, 495.) Additionally, Plaintiff reported to Dr. Oppong-Takyi that he had right knee pain when he was driving. (R. at 43, 495.) In the same October 2018 examination, Plaintiff was negative for dizziness, headaches, seizures, or weakness and had a normal gait, which the ALJ indicated raises questions about the severity of Plaintiff's symptoms. (R. at 43, 495, 497.) The ALJ also found that Dr. Oppong-Takyi's reports were inconsistent with Plaintiff's reports that he was exercising two times a day. (R. at 43, 531.)

Plaintiff argues the ALJ cited to one appointment during which Plaintiff was being treated for knee pain and asserted active symptoms of Meniere's disease which was not indicative of Plaintiff's overall condition. (R. at 43; Pl. Br. at 9.) As previously stated, the ALJ described Dr. Oppong-Takyi's findings at several appointments with Plaintiff, many of which had unremarkable physical examinations contrasting Dr. Oppong-Takyi's assessed physical limitations. (R. at 400, 435, 492, 495, 498–500, 541.) Additionally,

---

[1] Plaintiff points out that the ALJ incorrectly stated that Plaintiff told a treating orthopedist that he was driving when it was a PA. The Court corrects this in the following analysis.

- 7 -

Plaintiff was negative for dizziness, headaches, seizures of weakness, and had a normal gait at several appointments. (R. at 43, 495, 497.) As Defendant correctly points out, because Dr. Oppong-Takyi opined Plaintiff would experience Meniere's disease attacks five times a week totaling twelve hours of time for the attack and recovery after, "it was reasonable for the ALJ to expect these symptoms to be frequently documented in the record." (R. at 432; Def. Br. at 8–9.) The Court agrees. Dr. Oppong-Takyi opined to extreme limitations regarding Plaintiff's Meniere's disease but his examination records do not support his findings.

Plaintiff pushes back against the finding the ALJ made that Plaintiff's complaints of pain while driving and Dr. Oppong-Takyi's recommendation that Plaintiff not drive were inconsistent. (Pl. Br. at 9; R. at 582.) Plaintiff argues that he indicated to the PA that his knee hurt when he was driving on April 2018, while Dr. Oppong-Takyi did not indicate Plaintiff should not drive until October 2018. (R. at 495, 582; Pl. Br. at 9.) While this is true, the ALJ correctly considered the inconsistencies in Plaintiff's assertions that he had pain while driving, Plaintiff's admissions that he continued to drive, and Dr. Oppong-Takyi's recommendation that Plaintiff not drive. (R. at 495, 582.) Plaintiff indicated he stopped driving in 2016 yet continued to drive to doctor's appointments from 2016-2018. (R. at 59.) These inconsistencies support the ALJ's conclusion.

Plaintiff also points out that the ALJ found that Plaintiff's ability to exercise twice a day was not consistent with Plaintiff's own testimony and Dr. Oppong-Takyi's assessed limitations. (Pl. Br. at 10; R. at 531.) Dr. Oppong-Takyi wrote a clarifying note after the hearing indicating that Plaintiff does not currently exercise because of his Meniere's disease. (R. at 23.) Plaintiff argues that the ALJ's reason does not provide specific enough information and does not clarify what type of exercise Plaintiff does or for how long. (Pl. Br. at 10.) Further, Plaintiff argues that his ability to walk twice a day for ten to fifteen minutes is still consistent with Dr. Oppong-Takyi's opinion. (Pl. Br. at 10.) Even if this was error, it was harmless because the ALJ provided other reasons to support the decision to give partial weight to Dr. Oppong-Takyi's opinions. *Tommasetti*, 533 F.3d at 1038

("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotations marks omitted). The ALJ provided specific and legitimate reasons supported by substantial evidence in assigning partial weight to Dr. Oppong-Takyi's opinions and specifically assigning minimal weight to Dr. Oppong-Takyi's assessed limitations.

  **C. The ALJ did not err in excluding Dr. Oppong-Takyi's assessed limitations in the hypothetical presented to the VE.**

  Plaintiff argues the ALJ omitted Dr. Oppong-Takyi's assessed limitations in posing a hypothetical to the VE and that this was error. (Pl. Br. at 13–14.) Hypothetical questions posed to a vocational expert must contain all a claimant's limitations that are supported by substantial evidence. *Magallanes*, 881 F.2d at 756. Moreover, an ALJ must include only those limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The testimony of a vocational expert "is valuable only to the extent that it is supported by medical evidence." *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).

  Plaintiff argues what happened here is similar to *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988), where the Ninth Circuit held that hypothetical questions posed to a VE must set out a claimant's limitations and restrictions. Plaintiff argues that based on *Embrey*, incomplete hypotheticals or hypotheticals that lack support have no evidentiary value. *Id.* Plaintiff asserts this happened here when the ALJ did not include Dr. Oppong-Takyi's assessed limitations in the hypothetical presented to the VE. (Pl. Br. at 14–15.) Thus, Plaintiff contends the ALJ's decision is "based on evidence which has no evidentiary value, and so that decision is not based on substantial evidence." (Pl. Br. at 15.)

  Defendant argues Plaintiff's reliance on *Embrey* is misplaced and that the ALJ does not need to rely on the assessed limitations of medical experts whose opinions were properly discounted in presenting hypotheticals to the VE. (Def. Br. at 14–15.) *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). The Court agrees.

Here, the Court determined the ALJ provided specific and legitimate reasons supported by substantial evidence in giving partial weight to Dr. Oppong-Takyi's opinion. Specifically, the ALJ provided substantial evidence in assigning minimal weight to Dr. Oppong-Takyi's assessed limitations, as previously discussed. An ALJ is not required to present unsupported assessed limitations in the hypotheticals presented to the VE, and the ALJ did not err in refusing to do so here. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (An ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." (quoting *Ostenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).)); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove."). The Court finds the ALJ did not err in excluding Dr. Oppong-Takyi's assessed limitations because they were not supported by substantial evidence.

**IT IS THEREFORE ORDERED** affirming the January 25, 2019 decision of the Administrative Law Judge, as upheld by the Appeals Council on March 23, 2020. (R. at 30, 45, 1–4.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 13th day of July, 2021.

_____
G. Murray Snow
Chief United States District Judge